[Civ. No. 1835.   Third Appellate District.—April 19, 1918.]

PENRYN LAND COMPANY (a Corporation), Appellant, v. M. B. AKAHORI, as Administrator, etc., Respondent.

DEFAULT JUDGMENT—ORDER VACATING—APPEAL—ATTITUDE OF APPELLATE COURT.—Appellate courts are strongly inclined to uphold an order vacating a default judgment on the ground of mistake and excusable neglect if there be found in the record any legal justification for the action of the trial court.

ID.—INNOCENT PURCHASER—NECESSITY FOR SUBSTANTIAL EVIDENCE.—When, however, the orderly processes of law have been followed, and a judgment regularly obtained, there must be some substantial evidence received to excuse in a legal sense the inaction of the defendant before the court will be justified in setting at naught its prior determination, especially where an innocent purchaser relying upon the validity of the judgment has acquired the property for a valuable consideration.

ID.—ACTION AGAINST ADMINISTRATOR—FAILURE TO READ PROCESS—DELIVERY TO ATTORNEY FOR ESTATE—VACATION OF DEFAULT UNWARRANTED.—Where an administrator was served with a copy of the complaint and summons in an action to quiet title to property of his intestate, and, being very busy, merely glanced at the paper without reading it, and seeing that it pertained to the estate, left it on the desk of the attorney, there was no excusable neglect or mistake on the part of the administrator to justify the vacation of the default judgment taken against him.

ID.—FAILURE TO EXPLAIN DEFENSE TO ATTORNEY—ERRONEOUS CONCLUSION OF ATTORNEY AS TO DEFENSE—INSUFFICIENT LEGAL JUSTIFICA-

TION FOR VACATING DEFAULT.—In an action brought against an administrator to quiet title to property of his intestate, the order vacating the default judgment entered therein against such administrator, on the ground of his mistake and excusable neglect, is without legal justification, where the copy of the complaint and summons served upon defendant was not read by him, but placed in the hands of the attorney for the estate, and without any explanation of the defense, and the attorney concluded that no valid defense existed.

ID.—MISTAKEN JUDGMENT OF ATTORNEY—USELESSNESS TO DEFEND ACTION—INSUFFICIENT GROUND FOR RELIEF.—Mistake on the part of an attorney in concluding that it was useless to make a defense to the action is not the kind of a mistake for which a judgment may be set aside, although it might be the basis for an independent action for damages against the attorney.

APPEAL from an order of the Superior Court of Placer County vacating a judgment. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

Ben P. Tabor, for Appellant.

Tuttle & Tuttle, for Respondent.

BURNETT, J.—The appeal is from an order vacating a judgment quieting plaintiff's title to certain real estate. The order was made upon the ground of "the mistake and excusable neglect" of the defendant. Appellate courts are strongly inclined to uphold such an order if there be found in the record any legal justification for the action of the lower court. It is desirable, of course, to have causes tried and determined upon their merits, and, no doubt, this consideration was the determining factor with the lower trial judge herein. However, when the orderly processes of law have been followed and a judgment regularly obtained, there must be some substantial evidence received to excuse in a legal sense the inaction of the defendant before the court will be justified in setting at naught its prior determination, especially in a case where, as here, an innocent purchaser relying upon the validity of said judgment has acquired the property for a valuable consideration.

We may say that the first application was denied, but respondent was allowed to renew it. The latter application was based largely upon the same evidence as the first. The two affidavits of respondent herein, however, differ somewhat.

As the only evidence tending to show mistake or excusable neglect is found in said affidavits, we herewith set them out.

The first is: "I am and was at all times mentioned the duly appointed, qualified and acting administrator of the estate of M. Mukai, deceased; that on or about the 2nd. day of December, 1915, I was served with a paper by the sheriff of Sacramento County; that I was in the courthouse in Sacramento at the time and very busy; that I glanced at said paper saw it was pertaining to the estate of M. Mukai, deceased, and took it to the attorney for said estate, Lee Gebhart, and as he was very busy at the time, left it on his desk; that I did not open said paper or look at its contents and did not know that it was a complaint to quiet title to the property of the estate of M. Mukai, deceased; that I never knew such an action was pending until Nakamoto, of Penryn, rang me up after the judgment was made and informed me of the fact; that I would have defended said action if I had known that it was pending."

Then follows the statement that he has a good defense to the action.

It is quite apparent that the foregoing affords no legal justification for setting aside the default. Nothing in the nature of mistake or excusable neglect is disclosed. If either existed it must have been on the part of the defendant or of his attorney. As to the former, the only semblance of mistake relates to his ignorance of the nature of the document placed in his hands and of the fact that a judgment was entered against him. But there is no contention that he did not understand English, and if he failed to read the summons, he cannot urge that as an excuse for his failure to defend the action. That circumstance would constitute negligence rather than mistake, and, assuming it to be negligence, it would be inexcusable, and no attempt was made to excuse it. In fact, however, he did what might be expected under the circumstances; he placed the papers in the hands of his attorney. This was, no doubt, because he had faith in his attorney, and that fact does not afford any evidence of mistake or negligence.

Was there any mistake or negligence—excusable or otherwise—on the part of the attorney? There is no showing to that effect. To the contrary, the presumptions are all that the attorney was capable and honest; that he gave his atten-

tion to the business in hand; that after consultation with his client he was convinced that there was no valid defense to the action and that no additional expense should be incurred. If there had been any showing that the client was deceived or defrauded by his attorney or that the latter. did not act in good faith, it might be that a court in a proceeding like this could nullify his action, but the case thus far is one entirely devoid of any element of fraud, mistake, negligence, or surprise in the legal sense, and we see no reason for the application of section 473 of the Code of Civil Procedure.

Is the situation changed by virtue of the second affidavit of the respondent? The only additional averment contained therein bearing upon the question before us is:

"That at all times since my appointment to said office Lee Gebhart has been my attorney and handled the legal matters pertaining to said estate; That I had the utmost confidence in said Lee Gebhart and not being versed in legal procedure in this country intrusted all matters to him to handle as he deemed best; that I never did talk over the above case with Lee Gebhart as he deposes, and never consented to the entry of the default in said case and as soon as I heard that· a default had been entered in said case I procured other counsel to move to have the default set aside."

In this there is no additional fact tending to show any mistake on the part of respondent or any negligence except, possibly, in one respect to be hereafter noticed. Neither is there anything to disclose a mistake on the part of the attorney or any negligence that can be corrected in a proceeding like this.

In fact, he exculpates himself on the ground that he intrusted the entire matter to his attorney. That circumstance, of course, does not evidence negligence or mistake on his part. It was, indeed, justified by his confidence in his attorney. And as far as the latter is concerned, there is nothing to indicate that he was unworthy of 'that confidence, unless it be implied in the statement in reference to the conversation with said attorney and as to the consent to have a default entered.

As to the conversation, Mr. Gebhart deposes:

"On or about the 2nd. day of December, 1915, and while acting as attorney for said Akahori in the matter of the estate of Mukai, said Akahori brought to my office a copy of the

complaint and summons in the above entitled action which he said had been served upon him. I read the complaint and summons, talked with Akahori about the matter, and advised him, after learning the facts of the case that in my opinion it was inadvisable to defend the action. Subsequently and before default was entered in the case, Mr. Tabor, the attorney for plaintiff in said action, called at my office and I informed him that no defense would be made to the action."

It is to be observed that respondent's denial of this is somewhat equivocal. He does not specifically aver that he had no conversation whatever about the case with his attorney but that he did not have the conversation as Mr. Gebhart deposes. This denial would be consistent with the position that the conversation occurred *substantially* as stated by Mr. Gebhart.

However, conceding full effect to the denial and ignoring the improbability that a client, under such circumstances, would have no conversation with his attorney about the case, it must follow that the failure of respondent to state the facts was inexcusable negligence on his part in the absence of any satisfactory explanation of his conduct.

The averment that "he never consented to the entry of a default" is of no avail in view of the fact that he admits that he intrusted the entire matter to his attorney, involving as it would the question of discretion as to whether any defense should be made.

We repeat, if there was any mistake or negligence in the case, it was that of the attorney and not of the client, except as to the single fact of the failure to explain the defense, and this has not been excused.

But there is nothing to show that the attorney did not have full information from other sources as to the alleged defense of respondent, or that he did not act with the utmost good faith for the advantage of his client. In fact, there is no averment from which the inference can be drawn that the attorney's conduct in the premises was the result of "mistake, inadvertence, surprise, or excusable neglect," as contemplated by said section 473 of the Code of Civil Procedure. At most, it may be implied that he was mistaken in his judgment that it was useless to make a defense to the action. This, however, is not the kind of a mistake for which a judgment can be set aside, although it might be the basis for an

independent action for damages against the attorney.    (*Lally v. Kuster,* 177 Cal. 783, [171 Pac. 961].)

To recapitulate, the whole showing made by respondent amounts to this: An action was brought against him to quiet title.    He placed the matter in the hands of his attorney. There is nothing to impeach the character or ability of said attorney.    There is no evidence that either he or his attorney was deceived or misled.    The only circumstance of which complaint could be made by respondent is that his attorney's judgment was at fault in concluding that he had no valid defense.

But this, manifestly, is not sufficient ground for setting aside the judgment.    Otherwise, every suit that is lost through the error or mistake of an attorney would be subject to the operation of said section 473.

For further elucidation of the legal principles involved, we may refer to *Porter* v. *Anderson,* 14 Cal. App. 716, [113 Pac. 345]; *Redding etc. Min. Co.* v. *National Surety Co.,* 18 Cal. App. 488, [123 Pac. 544]; *Shearman* v. *Jorgensen,* 106 Cal. 483, [39 Pac. 863]; *Alferitz* v. *Cahen,* 145 Cal. 397, [79 Pac. 878].

If we look into the showing made by appellant we find additional reasons for upholding the judgment.    Not only is the theory of the application of said section of the code strongly combated, but it is shown, as before indicated, that the rights of an innocent purchaser, who relied upon the integrity of said judgment, would be jeopardized if the order is allowed to stand.

Respondent may have a remedy if he has been wronged, but it does not appear that he is entitled to the one which he has invoked.

The order is reversed.

Chipman, P. J., and Hart, J., concurred.